United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TESSE PEREZ,
Plaintiff,
v.
APYX MEDICAL CORPORATION,
Defendant.

Case No. 25-cv-06713-JST

**ORDER GRANTING MOTION TO DISMISS**

Re: ECF No. 22

Before the Court is Apyx Medical Corporation's ("Apyx") motion to dismiss. The Court will grant the motion.

**I. BACKGROUND**

Plaintiff Tesse Perez brought this products liability and negligence action against Defendants Solta Medical, Inc. ("Solta"), Bausch Health Companies Inc. ("Bausch"), and Apyx Medical Corporation ("Apyx") in connection with a failed surgical procedure. ECF No. 17 ("FAC"). Perez alleges that she underwent plastic surgery with Dr. David Sieber on November 17, 2022 in San Franscisco. ECF No. 17 ¶¶ 11–12. Perez alleges that that Dr. Sieber used the Solta's VASERlipo product to perform liposuction and Apyx's Renuvion product to perform skin resurfacing and body contouring procedures. *Id.* ¶¶ 13–19. As a result of the procedures, Perez suffered severe burns, related injuries, and substantial scarring. *Id.* ¶ 20. Perez alleges that the Food and Drug Administration ("FDA") issued a warning in June 2022 warning against the use of Renuvion for skin contraction with liposuction. *Id.* ¶¶ 26–29. Perez brings claims against Apyx for strict products liability and negligence.[1] *Id.* ¶¶ 58–70, 77–82.

[1] Defendants Solta and Bausch have since been dismissed with prejudice. ECF No. 36.

Perez filed an amended complaint on September 15, 2025. *Id.* Apyx moved to dismiss the complaint on grounds of both failure to effect service and failure to state a claim. ECF No. 22. Perez opposed the motion, ECF No. 26, and Apyx replied, ECF No. 27. In a prior order, the Court quashed Perez's service of the complaint on Apyx for failure to properly effectuate service. ECF No. 36. Perez filed a certificate of service on June 15, 2026. ECF No. 37. The Court now addresses Apyx's motion to dismiss for failure to state a claim.

**II. JURISDICTION**

The Court has jurisdiction over this matter under 28 U.S.C. § 1332(a).

**III. LEGAL STANDARD**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While this standard is not "akin to a 'probability requirement' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In determining whether a plaintiff has met the plausibility requirement, a court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel*, 393 F.3d at 1072.

**IV. DISCUSSION**

Perez makes three claims against Apyx: (1) strict products liability under a design defect

United States District Court
Northern District of California

"risk-expectation" theory; (2) strict liability under a design defect "consumer expectations theory"; and (3) negligence in the design, manufacture, marketing, and sales of Renuvion. *Id.* ¶¶ 58–70, 77–82. Apyx moves to dismiss, arguing that Perez's claims are preempted and that she fails to state a cause of action. ECF No. 22 at 11. The Court address each argument in turn.

**A. FDCA Preemption**

In its motion to dismiss, Apyx first argues that Perez's claims are claims about Apyx's Renuvion device's off-market marketing and are impliedly preempted by the Food, Drug, and Cosmetics Act ("FDCA"). ECF No. 22 at 7. Apyx claims that Perez's claims are preempted because they are based on alleged misrepresentation regarding off-label use of the device in violation of the FDCA, but the FDCA prohibits private enforcement. *Id*. at 9 (citing 21 U.S.C. § 337(a)). Perez responds that "the allegation that the product was being used off label produces the inference that the product was not safe for use in that manner" and "the allegation of off-label marketing only serve to show that Apyx knew the product would be misused in this dangerous fashion." ECF No. 26 at 6. In support of her argument, Perez cites *Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996), which found that state law claims for negligence and strict liability were not expressly preempted. *Medtronic*, 518 U.S. at 497. Perez fails to respond to Apyx's implied preemption argument.

The Supremacy Clause of the Constitution enables Congress to enact legislation that preempts state law. *See Gibbons v. Ogden*, 22 U.S. 1, 211 (1824). "Federal preemption occurs when: (1) Congress enacts a statute that explicitly pre-empts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field." *Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir. 2010) (citation omitted). In determining whether a claim is preempted, the Court heeds the long-established presumption against preemption. *See Medtronic,* 518 U.S. at 485. "Consideration of issues arising under the Supremacy Clause starts with the assumption that the historic police powers of the States are not to be superseded by . . . Federal Act unless that is the clear and manifest purpose of Congress." *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516, (1992) (citation modified).

Even if a state law is not expressly preempted by the FDCA, it may still be impliedly preempted if it conflicts with the FDCA's provisions. *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 348 (2001). There is no private right of action under the FDCA. *Perez v. Nidek Co., Ltd.*, 711 F.3d 1109, 1119 (9th Cir. 2013). Rather, "[t]he FDA is responsible for investigating potential violations of the FDCA." Id. Thus, state claims that "exist solely by virtue of the FDCA . . . requirements," *Buckman*, 531 U.S. at 348, are impliedly preempted as they "conflict[ ] with the FDCA's enforcement scheme," which entrusts enforcement to the FDA. *Nidel*, 711 F.3d 9 at 1119. However, as recognized by the Ninth Circuit, "*Buckman* . . . left the door open to state-law claims 'parallel' to federal requirements." *McClellan v. I-Flow Corp.*, 776 F.3d 1035, 1040 (9th Cir. 2015). To avoid preemption, "[t]he plaintiff must be suing for conduct that *violates* the FDCA (or else his claim is expressly preempted [ ]) but the plaintiff must not be suing because the conduct violates the FDCA (such a claim would be impliedly preempted under *Buckman*)." *Nidek*, 711 F.3d at 1120 (citation omitted) (emphasis in original).

Perez alleges that the FDA recommended in June and July 2022 that the Renuvion/J-Plasma device not be used for skin contraction, alone or in combination with liposuction or to improve the appearance of skin combination with liposuction. FAC ¶¶ 26–28. She alleges that the use or foreseeable misuse of skin resurfacing and body contouring was an off-label use that was not FDA-approved. She further alleges that Apyx should have known that surgeons would use Renuvion in contravention of FDA guidelines but nonetheless designed, marketed, and sold Renuvion knowing that it could be used in an off-label manner. *Id.* ¶¶ 29–30. Her strict liability design defect claim alleges that the Renuvion product did not perform as safely as an ordinary consumer would have expected when used or misused in a foreseeable way, and that the way in which the Renuvion product was designed caused a risk of potential harm that was so substantial that the entire product was defective. *Id.* ¶¶ 58–70. In her negligence claim, she alleges that Apyx was negligent in the design, manufacturing, marketing, and selling of the Renuvion product and that Apyx failed to use the reasonable amount of care. *Id.* ¶¶ 79–82.

Apyx argues that while Perez's allegations may not be labelled as claims to enforce the FDCA, the substance of Perez's claims shows that the claims are impliedly preempted. ECF No.

22 at 9 (citing *Nidek*, 711 F.3d at 1120). In *Nidek*, the Court found that plaintiff's fraud by omission claims for failing to disclose that the device was not FDA-approved for a certain procedure were impliedly preempted because those claims existed solely by virtue of the FDCA disclosure requirements. 711 F.3d at 1119–20 (citing *Buckman*, 531 U.S. at 353). Other courts have similarly held that a claim need not be labeled as a claim for enforcement of the FDCA to be impliedly preempted. *See Wilson v. ColourPop Cosm., LLC*, 2023 WL 6787986 at *7 (N.D. Cal. Sep. 7, 2023) ("[A]lthough the Court agrees with Plaintiff that the FDCA is not mentioned once in the second amended complaint, Plaintiff's claims, in substance, nevertheless seek to enforce the FDCA by holding Defendant liable for its alleged use of Harmful Ingredients—which are not approved by the FDA for use in the eye area . . . .").

Apyx argues that the substance of Perez's claims are that Renuvion injured Perez by marketing the product for off-label use to her surgeons because she fails to allege a defect in the device and rather claims that Apyx designed, manufactured, marketed, and sold the Renuvion device knowing that it would be used in an off-label dangerous manner. ECF No. 22 at 9 (citing FAC ¶¶ 29, 30). Apyx cites *Hawkins*, where a court construed a "products liability for negligence" claim as "being based on the negligent failure to warn of the dangers associated with [the device] when used off-label" and found the claims impliedly preempted because "[o]ff-label promotion itself exists only as a creation of the FDCA scheme." *Hawkins v. Medtronic, Inc.*, No. 1:13-CV-00499 AWI SK, 2014 WL 346622, at *19 (E.D. Cal. Jan. 30, 2014).

Apyx misreads Perez's complaint. At heart, Perez's claims are design defect and negligence claims, not off-label marketing claims, and therefore are not preempted. *See Kilmer v. Medtronic, Inc.*, No. 120CV01277AWIHBK, 2021 WL 1405198, at *6 (E.D. Cal. Apr. 13, 2021) (finding negligence and manufacturing defect claims not preempted). Courts have routinely declined to find "traditional state common law claims" impliedly preempted as they exist outside of the FDCA. *See Houston,* 957 F.Supp.2d 1166, 1179–80 (C.D. Cal. 2013) ("Plaintiff's fraudulent advertising claims are not impliedly preempted under *Buckman* because they are moored in traditional state common law that exists independently from the FDCA"); *Alton v. Medtronic,* No. 3:13–CV–409–PK, 970 F.Supp.2d 1069, 1097–99, 2013 WL 4786381, at *23–24,

29 (D. Or. Sept. 6, 2013) (holding that plaintiff's strict liability misrepresentation claim premised on defendant's misrepresentations while promoting off-label uses of the medical device was not impliedly preempted because plaintiff stated claims under state law that existed independently of the FDCA). Similarly, here, Perez's claims are rooted in traditional California products liability and negligence law that exists independently of the FDCA. Accordingly, the Court finds that Perez's claims are not impliedly preempted by the FDCA.

Apyx also argues that Perez's strict liability design defect claims are specifically preempted by the FDCA. ECF No. 22 at 10. Apyx cites to *Kashani-Matts v. Medtronic, Inc.*, where the court found that plaintiff's claims that an FDA-approved device was defectively designed was impliedly preempted because claims that "the design was unsafe when used in the manner promoted by [defendant] . . . [and] because the risks of danger in the design outweigh the benefits of the design" were impliedly preempted. No. SACV 13-01161-CJC, 2013 WL 6147032, at *4 (C.D. Cal. Nov. 22, 2013). The court there wrote that as "[p]laintiff's design defect claim is an 'attack' on the FDA review process rather than a parallel state claim, it is preempted by the [Medical Device Amendments ("MDA")]" to the FDCA. *Id.*

*Kashani-Matts* is inapplicable. That case involved a Class III device which is approved through the 360(k) process under the FDCA, as amended by the MDA, and the court there found the strict liability claim was preempted specifically by § 360(k) of the FDCA. *Id.* at *1; *see also id.* at *2 ("[Design defect claims] are attacks on the risk/benefit analysis that led the FDA to approve an inherently dangerous Class III device. Such claims are expressly preempted by § 360k.")) (quoting *In re Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig.,* 623 F.3d 1200, 1206 (8th Cir.2010)). That kind of FDCA preemption applies only to devices approved through the § 360(k) process. *Houston*, 958 F.Supp.3d at 1177 (citing *Bryant v. Medtronic, Inc.,* 623 F.3d 1200, 1206 (8th Cir.2010)). The Renuvion device, by contrast, was approved through the FDA's 510(k) process instead. ECF No. 22 at 8; FDA, *Premarket Notification 510(k)*, https://www.fda.gov/medical-devices/premarket-submissions-selecting-and-preparing-correct-submission/premarket-notification-510k [https://perma.cc/5ANJ-5F4R] ("A 510(k) is a premarket submission made to FDA to demonstrate that the device to be marketed is as safe and effective,

United States District Court
Northern District of California

that is, substantially equivalent, to a legally marketed device (section 513(i)(1)(A) FD&C Act)."). As the *Alton* court noted, "the FDA does not impose 'requirements' specifically regarding the design of a medical device when the device is approved through the Section 510(k) process, with the consequence that the Section 360k(a) preemption provision is entirely inapplicable to state-law design defect claims arising in connection with a device approved under Section 510(k)." *Alton v. Medtronic, Inc.*, 970 F. Supp. 2d 1069, 1080 (D. Or. 2013). Accordingly, Perez's strict liability claims for a product approved under the 510(k) process are not preempted by § 360(k).

Finally, Apyx repeats its argument that Perez's negligence claim is also preempted as it is premised solely on alleged off-label marketing. ECF No. 22 at 11. That's not what the complaint says. Perez's negligence claims are based in traditional state tort law—she alleges that "Apyx failed to use the amount of care in designing, manufacturing, marketing, supplying, inspecting, repairing, distributing and selling the Renuvion product that a reasonably careful [company] would use in similar circumstances to avoid exposing others to a foreseeable risk of harm." FAC ¶ 80. This is not an illegal off-label promotion claim as in *Houston v. Medtronic*, 957 F. Supp. 3d at 1178.

In short, the Court rejects Apyx's claims that any of Perez's claims are preempted.

**B. Failure to Allege Proof of Defect**

Apyx argues that Perez has failed to allege the proof of a defect in the Renuvion product, necessitating dismissal of both her strict products liability and negligence claims.[2] In opposition, Perez responds only that her claims satisfy the standards set forth in *Iqbal* and *Twombly*, *supra*. ECF No. 26 at 8, 10.

[2] Apyx also argues that Perez's negligence claims must be dismissed as duplicative of her strict liability design defects claim. ECF No. 22 at 11. The cases found by the Court suggest that parties may plead these liability theories in the alternative. *See Domion v. Triquint Semiconductor, Inc.*, No. 3:16-CV-01852-SB, 2018 WL 3385904, at *4 (D. Or. June 11, 2018), *report and recommendation adopted*, No. 3:16-CV-01852-SB, 2018 WL 3385174 (D. Or. July 9, 2018) ("Although Plaintiffs' negligence and strict liability claims stand in factual conflict with one another, Plaintiffs are permitted to plead both theories of liability.") *Thomas v. Abbott Lab'ys*, No. CV1207005MWFCWX, 2013 WL 12114075, at *2 (C.D. Cal. Jan. 15, 2013) (quoting *Dillard v. Victoria M. Morton Enters., Inc.*, Nos. 2:08-cv-01339 FCD KJN PS, 2:08-cv-01777 FCD KJN PS, 2010 WL 1659849, at *11 (E.D. Cal. Apr. 23, 2010) ("A 'plaintiff may pursue a failure to warn claim premised on a strict liability theory, a negligence theory, or both theories.'") .

United States District Court
Northern District of California

"To state a claim for strict liability and for negligence, Plaintiffs must allege how the product was defective." *King v. Select Comfort Corp.*, No. EDCV1901362CJCSHKX, 2019 WL 13438460, at *2 (C.D. Cal. Nov. 13, 2019), *aff'd*, 824 F. App'x 532 (9th Cir. 2020) (citing *Pooshs v. Philip Morris USA, Inc.*, 904 F. Supp. 2d 1009, 1025 (N.D. Cal. 2012)). To plead a claim for strict product liability in California, the plaintiff must allege that: "(1) the product is placed on the market; (2) there is knowledge that it will be used without inspection for defect; (3) the product proves to be defective; and (4) the defect causes injury" from a reasonably foreseeable use of the product. *Scott v. Metabolife Internat., Inc.*, 115 Cal. App. 4th 404, 415 (2004). "California recognizes strict liability for three types of product defects—manufacturing defects, design defects, and warning defects[.]" *Lucas v. City of Visalia*, 726 F. Supp. 2d 1149, 1154 (E.D. Cal. 2010) (citing *Anderson v. Owens-Corning Fiberglass Corp.*, 53 Cal. 3d 987, 995 (1991) and *Karlsson v. Ford Motor Co.*, 140 Cal. App. 4th 1202, 1208 (2006)). "Risk-benefit and consumer expectations are alternative theories for establishing a cause of action for design defect strict liability." *Chavez v. Glock, Inc.*, 207 Cal. App. 4th 1283, 1312 (2012).

Here, Perez alleges that the misuse of the Renuvion product in contravention of FDA guidelines should have been known to Apyx and that, at the time of the injury, the product was being used in the manner intended by Apyx. ECF No. 17 ¶¶ 30, 37–38. The complaint also states that the "Renuvion product and related component parts did not perform as safely as an ordinary consumer would have expected it to perform when used or misused in an intended or reasonably foreseeable way" and that "[t]he gravity of the potential harm resulting from the use of the Renuvion product is so substantial that the design of the product is defective." *Id.* ¶¶ 61, 69.

Perez makes design defect claims under both the consumer expectations test and the risk-benefit test. ECF No. 17 ¶¶ 58–70. "[U]nder the 'consumer expectations test,' a product's design is defective if it has failed to perform as safely as its ordinary consumers would expect when used in an intended or reasonably foreseeable manner." *Lucas*, 726 F. Supp. 2d at 1154. "[U]nder the 'risk-benefit test,' a product's design is defective if the design embodies 'excessive preventable danger,' that is, the risk of danger inherent in the design outweighs the benefits of such design." *Id.* (quoting *Barker v. Lull Eng'g Co.*, 20 Cal. 3d 413, 430 (1978)).

Here, Perez's allegations that Renuvion was used or misused in a dangerous way do not sufficiently plead the existence of a design defect. Perez does not identify what design defect affected Apyx's Renuvion product and only contends in conclusory fashion that the foreseeable use or misuse of the product and the fact that it caused her injury sufficiently pleads the existence of a defect. ECF No. 17 ¶¶ 59, 65, 69; ECF No. 26 at 7. That, however, is not enough to sustain a product defects claim. *Dilley v. C.R. Bard, Inc.*, No. 2:14-CV-01795-ODW, 2014 WL 2115233, at *4 (C.D. Cal. May 21, 2014) ("Dilley's design-defect claim fails [because] he has not been able to identify a design defect. He has alleged a significant amount of information about the operations he underwent, the pain he endured, and surgeon's findings. But all of that information does not translate into an actionable defect without alleging how the product was defective."). Perez's allegations that "go to the elements of a design defect are bare legal conclusions." *Mercury Ins. Co. v. Samsung Elecs. Am., Inc.*, No. 25-CV-10480, 2026 WL 1215532, at *2 (N.D. Cal. May 4, 2026.

Perez also fails to identify a manufacturing or warning defect to prove a products liability case under the other strict liability theories. *Nazzal v. Wyeth*, Case No. 23-cv-10102-MWF (JPRx), 2024 WL 2105601, at *2 (C.D. Cal. Mar. 19, 2024) (dismissing claims for strict liability and negligent failure to warn when plaintiff's complaint did not allege how or why the warning on the diet drugs were inadequate, or what an adequate warning might look like."); *Morris v. Sun Pharma Glob.*, No. CV2010441PAJPRX, 2021 WL 687247, at *5 (C.D. Cal. Feb. 19, 2021) ("Under a manufacturing defect theory, Plaintiff must [allege] that the subject product is defective, and that its defectiveness caused the alleged harm. As stated above, Plaintiff does not [allege] how the [product] is defective or how the defects in the testosterone cypionate caused his injuries."). Perez's "bare assertion[s] do[] not in any way identify the alleged design defect that plagues" Apyx's Renuvion device. *Dilley v. C.R. Bard, Inc.*, No. 2:14-CV-01795-ODW, 2014 WL 1338877, at *4 (C.D. Cal. Apr. 3, 2014). Accordingly, the Court will dismiss Perez's strict product liability claims.

Perez's claim for negligence also fails. Perez alleges that "Defendant Apyx were (sic) negligent in designing, manufacturing, marketing, supplying, inspecting, repairing, distributing

and selling the Renuvion product" and that it "failed to use the amount of care in designing, manufacturing, marketing, supplying, inspecting, repairing, distributing and selling the Renuvion product that a reasonably careful designer, manufacturer, marketer, supplier, inspector, repairer, distributor and seller would use in similar circumstances to avoid exposing others to a foreseeable risk of harm." ECF No. 17 ¶¶ 79–80. Once again, however, Perez does not identify the design defect that caused her injury. Accordingly, the Court finds that Perez does not adequately plead her negligence claim either.[3]

Accordingly, the Court grants Apyx's motion to dismiss.

**C. Causal Connection**

Apyx also moves to dismiss on the grounds that Perez has not adequately pleaded causation. ECF No. 22 at 13. Apyx argues that the FAC does not "show" that the defect in the Renuvion device was the cause of Perez's injuries. ECF No. 22 at 13–14. Perez's only response to this argument is a claim that her counsel consulted with an expert who opined that her injuries were causally connected to the Renuvion device. ECF No. 26 at 2.

"In the products liability context, the plaintiff must . . . sufficiently allege that a defect in the defendant's product caused injury and that the existence of the defect was due to the defendant's negligence." *Hanson v. Argon Med. Devices, Inc.*, No. 8:24-CV-02013-FWS-DFM, 2025 WL 1602588, at *4 (C.D. Cal. June 2, 2025) (quoting *Nally v. Grace Cmty. Church*, 47 Cal. 3d 278, 292 (1988) (citation modified)). Perez's complaint states that Defendant Sieber "used a product called Renuvion" "to perform the skin resurfacing and/or body contouring procedures during the surgery," ECF No. 17 ¶ 17; that "[a]s a result of these procedures, Plaintiff Perez suffered severe burn wounds to her flank. The burn wounds resulted in necrosis to the related tissues, and extensive wound care intervention to attempt to mitigate the ultimate harm caused by the wounds. Plaintiff Perez is left with permanent, substantial, unsightly scarring in the area of the

[3] Apyx argues in its reply that Perez's strict liability claims must be dismissed with prejudice as California does not recognize strict liability claims for prescription medical devices. ECF No. 27 at 4–5. Because this argument was raised for the first time on reply, the Court does not consider it. *Ellison Framing, Inc. v. Zurich American Ins. Co.,* 805 F.Supp.2d 1006, 1011 n. 1 (E.D.Cal.2011) ("The court typically cannot consider arguments first raised in reply").

burn wounds that resulted from the surgery.", *id.* ¶ 20; that "the Renuvion design caused harm to Plaintiff," *id.* ¶ 65, and that "[t]he Renuvion product and related component part's failure to perform safely was a substantial factor in causing Plaintiff Perez's harm," *id.* ¶ 63. That is all that is required.

Apyx seems to argue that Plaintiff needs to show "prima facie evidence of causation" in her complaint, but cites only cases decided at the summary judgment stage. ECF No. 22 at 14. *See Vanguard Logistics Servs. (USA) Inc. v. Groupage Servs. of New England, LLC*, No. CV180517DSFGJSX, 2022 WL 1601389, at *7 (C.D. Cal. Feb. 8, 2022) ("The cases VLS cites are inapposite because they apply the standard for motions to dismiss, not motions for summary judgment."). Because they apply the wrong standard, these cases are not helpful to the Court. *Allen v. Horizon Tower Ltd., LLC*, No. 1:23-CV-00559-BLW, 2024 WL 3067273, at *3 (D. Idaho June 20, 2024), *aff'd sub nom. Allen v. Cellco P'ship*, No. 24-4573, 2025 WL 1367824 (9th Cir. May 12, 2025). Accordingly, the Court will not dismiss on these grounds.

**D. Consumer Expectations Test**

Apyx argues that Perez cannot plead a design defect claim under the consumer expectations test when, as here, the product was used only by specialized physicians and trained medical professionals. ECF No. 22 at 14–15.

It contends that "the 'consumer expectations test' is 'reserved for cases in which the *everyday experience* of the product's users permits a conclusion that the product's design violated *minimum* safety assumptions, and is thus defective *regardless of expert opinion about the merits of the design*." *Id.* at 14 (quoting *Soule v. Gen. Motors Corp.*, 8 Cal. 4th 548, 567 (1994) (emphasis in original)). *Soule* has nothing to do with the adequacy of a pleading. In *Soule*, the California Supreme Court held that a trial court erred in instructing the jury on the ordinary consumer expectations test for determining design defect, since plaintiff's theory of design defect involved matters that were not subject to ordinary consumer expectations, particularly given that "both parties assumed that quite complicated design considerations were at issue, and that expert testimony was necessary to illuminate these matters." *Id.* at 570. As with its attempts to use summary judgment cases to support its arguments, Apyx's reliance on *Soule* is a distraction.

United States District Court
Northern District of California

Apyx also cites to *Mansur v. Ford Motor Co.*, 197 Cal. App. 4th 1365, 1375-78 (2011)). But that case considered the appropriate limits on what an expert could say to establish what an ordinary consumer should expect about a product's safety. *Id*. at 1375.

Accordingly, the Court will not dismiss on these grounds.

**CONCLUSION**

For the foregoing reasons, the Court grants Apyx's motion to dismiss with leave to amend. Within 21 days from this order, Plaintiff may file an amended complaint solely to cure the deficiencies identified in this order.

**IT IS SO ORDERED.**

Dated: September 14, 2026

JON S. TIGAR
United States District Judge